This video shows how to install the Safeco Insurance Company of Illinois    safeco.com safeco.com safeco.com safeco.com Okay, Senor versus Safeco Insurance, Mr. Mandel. Chief Judge Pryor, may it please the court. My name is Roger Mandel and I represent the appellant, Gina Signor. Appellant Gina Signor brings two claims, the illegal methodology claim and the dealer fees claim, and she appeals the denial of certification and the summary judgment as to both. Due to time constraints, I'll address only the illegal methodology claim unless the court has questions on the dealer fees. First, I'll argue that the district court erred by granting summary judgment against Signor on her illegal methodology claim, and correspondingly by denying summary judgment to Signor on Safeco's liability on that claim. Florida Statute 626.97435A provides that the insurer may elect a cash settlement based upon the actual cost to purchase a comparable motor vehicle. It then provides that such costs may be derived from, and it gives three methods. The first, A1, which was the basis for the district court summary judgment, is the cost of two or more comparable vehicles available in the local market area. The third, A3, is the retail cost using two or more quotations obtained from two or more licensed dealers in the local market area. The CCC system used by Safeco doesn't comply with A1 or A3 because it doesn't use costs or quotations, but rather artificially reduced values created by starting with dealer take or advertise prices and decreasing them by uniform condition adjustments calculated by some unknown methodology. What about 5C? I understand from the record that that provision was at issue a little bit at some point. I can read it to you if you need to recall. No, I'm familiar with 5C. It starts out, Your Honor, by saying that if you use a method other than A or B, then you have to document it carefully in the file, and particularly any depreciation. On appeal, Safeco is not claiming that they complied with C, nor could they, because it says other than as provided in A or B, and they specifically used the method provided for in A2A, which is an electronic database, which disqualifies them from now claiming that they use some other method, which might fall under C. My understanding is Safeco has not contended on appeal that they complied with C, only A1, A2, and A3. The key to A1, which is what the district court granted summary judgment on, and A3 as well is that they didn't use costs or quotations. They started with dealer advertised or take price, and they reduced them by uniform condition adjustments. Those uniform condition adjustments were for the express purpose of taking down from what would have been retail replacement costs and reducing those to, in a private sale, what the total loss vehicle would have sold for but under any definition of cost, there had to be two or more actual vehicles that you could have purchased for the values that they used, but there was never any two vehicles that were advertised or actually sold for the prices that were used in the calculation by the CCC system, and Ms. Signore's particular case gives a great illustration. I don't know why the insurance company can't rely on advertised prices. Your Honor, we can argue back and forth about whether it's sales only or sales or advertised prices, but the key is that they didn't use either. They took advertised prices, and then they reduced them by these uniform condition adjustments. So, for example, in Ms. Signore's case, they used two take prices and 10 advertised prices, and then they reduced each of those by $1,064, and then they averaged those reduced prices together to value her vehicle. Well, none of those 12 vehicles could ever have been, were ever available in the marketplace to be bought for X dollars minus $1,064, and the A-1 says you have to use the cost of two or more vehicles in the local market area. Be based upon the actual cost. It doesn't say it has to be equal to the actual cost, right? Well, it says derive from the cost. Derive from one of the three methods. I don't think derive from is a free license to do whatever we want. In other words, not to use fictional values, right? What the legislature was expecting was here are two cars, two actual existing cars that were available or were sold for this amount of money in the marketplace, and there were never any vehicles that were available for those prices minus $1,064. That doesn't meet any reasonable definition of cost. That is a theoretical value. That is not a cost. And is your issue with the application of a uniform reduction for condition, in other words, comparable cars would have a condition associated with them that would be reflected in the price? So is your argument here that the fact that it was a uniform condition criteria that was applied, is that what's wrong? Well, I think it's that they used any adjustment at all to the retail prices. Look, they had a choice. They could have used private party transactions, which would have been actual costs, whether it was actual prices or actual advertised costs, or they could have used actual retail costs, those at a dealer, advertised or sales prices. But what you can't do is take an advertised dealer price, subtract $1,064 for it, and say, oh, this is a cost of a private vehicle. That's not a cost. That's a guess. So they're doing it based on guesstimates of what something would have sold in a private- So those two cars are going to be exactly alike, right? Sure. I mean, they're going to have differences in age and wear and condition and number of miles. I mean, there's not an exact way to do this, is there? Well, that's the whole point of the statute, Your Honor, is to give a methodology for making what you're correct is inherently an estimate. And the legislature in A1 says you can do it based upon the cost of two or more vehicles in the marketplace. That is, actual vehicles that could have been purchased, at least theoretically, for those prices. But they didn't- But they're still making a subjective judgment about what is comparable, right? But nobody's challenging that the vehicles used for Miss Signal or any of the other people were not comparable. What we're challenging is that they're not using the cost of those, as provided for in A1, the cost of those vehicles. They're using an advertised price minus some theoretical adjustment, the methodology of which is unknown even to Safeco because CCC regards it as proprietary, and then averaging those theoretical values together. Well, that is not basing the vehicle on a cost under any reasonable definition of cost. They also don't comply, Your Honors, with A2A, which allows you to use an electronic database if it's a generally recognized used motor vehicle industry source because it requires you to pay the retail cost, which Safeco admits they don't. And this is not a generally recognized used motor vehicle industry source because nobody in the business of selling used cars recognizes it or uses this. Is this referring to, you think, Kelley Blue Book or something like that? Absolutely. Kelley Blue Book, NADA, Edmonds, all those things that are used in the motor vehicle industry. I'd also note that if you allow A1, if you allow an insurer like them to use something that's not a generally recognized used motor vehicle source and claim that it complies with A1, then you render A2 meaningless. By saying that you have to use a generally recognized used motor vehicle industry source, I think it's fair to say the legislature intended that you can't use a database that is not a generally recognized used motor vehicle source. And if you will say that you can try with a database and then say I inadvertently complied with A1, then you're allowing exactly what the legislature did not agree to, which is using a database which is not a generally recognized used motor vehicle industry source. Now, I'd also like to address why the district court abused its discretion in certifying the illegal methodology claim. The sole reason that the court gave for not finding predominance and superiority was, one, the need to review the claim files to figure out how much Safeco paid, and two, the need to get NAD evaluations for each of those persons. But as Chief Judge Pryor wrote in the Brown v. Electra case, the black letter rule is that the need for individualized damages calculations generally does not prevent predominance, particularly where you're doing it in a formulaic method like here, where you're simply taking what they paid and comparing it to these NADA evaluations. Now, the district court found a very limited exception applied for in Judge Pryor's words, where the damages calculations would be so complex, fact-specific and difficult, that the burden on the court system would be simply intolerable. The sum total of the district court's reasoning was the statement that the claim review alone will, quote, compile into a serious burden on the court and the litigants. Well, first of all, that considered the burden on the court, on the litigants, which is not part of the test. In the Aquin case, per curiam, this court said that it's not necessarily true that file-by-file review means file-by-file trials, which would require an on the court system. And I think it's very important to note there was no evidence that there would be any burden on the district court from the review of the claim files or the comparison to NADA. All that was going to happen outside the court supervision. There was no evidence that any individualized trials would need to be held. And so this clearly falls within the black letter rule, and it was an abuse of discretion for the court not to certify the illegal methodology class. I'll reserve the rest of my time for rebuttal. Thank you. Hey, Ms. Thompson. Good morning, Your Honors. Elizabeth Thompson on behalf of Safeco Insurance Company of Illinois. There's no one right way to value a total loss vehicle. In this breach of contract case, we have to start with the language of the contract. Safeco's insurance policy requires it to pay the actual cash value of an insurance total loss vehicle. Florida law sets forth several permissive ways that an insurance company can determine actual cash value. There's no one right way, but it looks to me like perhaps under the statute, there are three right and I think Your Honor also identified subsection C, which I want to speak briefly about, was raised in the trial court as a way that Safeco complied with the statute. And the district court found that Safeco's use of CCC did comply with subsection C. No one's argued that here, right? I'm sorry, say that again. No one has argued that here, right? That's correct because plaintiffs did not raise that in their appellate brief as a reason why district court was incorrect. And so we believe they've actually waived that issue for appellate court review. And it would be an alternative basis for affirming because they didn't attack that? That's correct. That's correct. So like Your Honor has identified, there are a number of permissive ways that an insurer can value a total loss vehicle and Safeco has complied with not one, but four of those methodologies in calculating the value of senior's vehicle. The district court therefore correctly granted summary judgment to Safeco on senior's improper methodology claims. Determining actual cash value is inherently individualized. As Judge Pryor said, no two cars will be exactly alike. Well, right. But that's, I would think, why the statute says when comparable motor vehicles, for instance, are available in the local market area, the cost of two or more such comparable motor vehicles available within the preceding 90 days. So I don't think anyone has argued that these are not comparable, right? So once they're comparable, where does the statute, setting aside the potential argument about C, where does the statute give you the right to make adjustments to those prices? I don't see that there. Sure. So I think there's a couple of places where the statute and the policy give the right for the insurer to make adjustments based on condition. And I think there's actually numerous adjustments that are made for mileage, other things that are looked at that are detailed in the CCC report itself. The condition adjustment, I think, is the only one that they're disputing. First of all, the statute says, based on, and I think this is Judge Pryor, you were hitting on this, based on and derived from. It does not say that the calculation has to equal, so it doesn't say you have to take the cost of two cars that are available, two comparable vehicles that are available in the local market area, take those two cars, average them out, that's the amount that you have to pay the insured. It does not say that. Under your approach, could the insurance company say, okay, here are the two cars, we'll average the value, and we'll decide that it will be based on that value if we give the insured party that value minus $5,000. I mean, that is based on it in a sense, right? Or maybe minus $10,000. Sure. What's the limit to your argument? Right. So I understand what you're saying, and I think that that's not what happened here. What we're looking at is the term. But what I'm saying is it seems to me that under your definition of as long as you perform this calculation in the beginning, you can kind of adjust it as you please. I don't see the limit to that. No, and I think where that comes in is the term comparable motor vehicle. That's the phrase that's used in the statute, and it's actually defined elsewhere in the statute. I believe it's in subsection, excuse me, subsection 5. It says comparable motor vehicle is defined to be one that is made by the same manufacturer of the same or newer model year and of a similar body type and that has similar options and and that is in as good or better overall condition. So the statute explicitly sets forth that the insurer can take the condition, the mileage, all of these- In finding those comparable vehicles, not in finding some vehicles and then adjusting them to make them comparable in the eyes of the insurer. Well, I think you also have to look at the cost to purchase a comparable motor vehicle because the cost to purchase a comparable motor vehicle is not, let's take the insurance vehicle here, which was, I believe, a 2014 Lexus, and let's go out and see what we can buy a 2014 Lexus at a dealer who has a used 2014 Lexus that has been reconditioned. It's what would it cost to buy plaintiff's 2014 Lexus right before her accident? What is the condition- This is available in the local market area. That suggests that you are supposed to look at cars that the person could go buy that are comparable. Now, you can figure out what's comparable, right? Maybe if her car was in bad condition, you can look for cars that are in bad condition, but I don't see how you get to imagine a hypothetical car when the statute says local market area. Right, and I don't think we are imagining a hypothetical car. I think what's happening is we're finding comparable motor vehicles and that adjustment is to put the vehicles, and Senior's vehicle was actually adjusted upward. So her base value was adjusted upward because her vehicle was in better condition than normal wear, which is the kind of baseline condition that all of the vehicles are brought down to. So you are right, and sometimes Safeco and CCC do look to private vehicles in the market and those are not adjusted. There's no condition adjustment there, but the condition adjustment is simply to make these comparable motor vehicles, and we contend that that is explicitly allowed by the statute. It also is... Overarching concern in the statute is that it either has to be the actual cash value of that vehicle, right, or the replacement with another of like kind and quality. Correct. So the assumption is one like it, right? Right, exactly. And the problem is that these methods are, and the reason they use language like based upon and derived from is that no two cars are going to be exactly alike. Right, and I think that I was hitting on the point that you made in counsel's argument, which is that no two cars are going to be alike. And so you got, it's not... That's why I would think that you would choose the ones, if you were using a one, you would comparable in your view, and then you base the decision on that. Or if you're not satisfied that they're comparable vehicles, you could look up the value in Kelly Blue Book or Edmonds or something like that. Well, the problem with looking up Kelly Blue Book or Edmonds or even NADA, which is the procedure that was suggested by plaintiff, is that does not take into account condition. NADA is very clear that it does not take into account a car's condition. So when you look up the 2014 Lexus and you use the clean retail value, which is the value that plaintiff is suggesting should be used here, that's what you could buy a 2014 Lexus that has been reconditioned by a dealer. That is not a comparable motor vehicle. I've looked at the value of my various cars when getting ready to sell them though, and you can say whether on various of these databases, it's in excellent condition or good or fair or poor. Is that just not? No, that is correct. But that's not what they're suggesting. They're suggesting that condition doesn't matter at all. And I think that that's actually what my colleague answered into your question in his argument regarding whether they're taking issue with the uniformity of the adjustment. And they're saying, no, there should be no adjustment for condition whatsoever. I didn't understand him to be saying that, but I'll certainly ask and see if that's the case. I agree that, of course, you can't say that any 2014 Lexus should be valued at the same price as the nicest, most best condition. That's not a good way to say that. Anyway, you know what I'm saying. I don't think that would be a fair way to do it, but I have not understood that to be their argument. And I apologize if I misunderstood, but I think that in reading their briefs and in listening to their argument today, they are saying, and they are relying on the value of senior's vehicle as set forth in NADA's clean retail value, which everybody concedes or agrees that is a reconditioned vehicle that would be available from a dealer. And what CCC is doing is they are also looking at motor vehicle. It's not going to be easy to find a motor vehicle that's going to be in the exact same condition as this particular. The adjustments you are making are to account for those differences in condition, right? Correct. The uniform condition adjustment is. And their argument is you can't do that. Correct. Their argument is that condition doesn't matter. In fact, I think they say something very similar to that in their brief. Is that, I think I understand that you are saying that their argument once they get to the damages portion is that you would rely on the NADA value. I think that's a little bit different than their merits argument about how you come up with this number in the first place. Because if a car is comparable, then I would certainly think that the condition would matter in that case, right? If the car that, if two cars are comparable, then I would think you would think that they had similar enough condition. Yes, I think two comparable cars under the definition in the statute have either the comparable car has to have the same or better condition, right? Yes. Okay. I don't know if that answered your question. It does. Okay. And I think that we also have to look at C, 5C, which has been identified also as. You're saying the district court made a determination that your methodology satisfied 5C. So I think that the argument that was made in the lower court is that the CCC report did not properly provide the information that was required by 5C. And the district court found that it did. I don't know that the district court actually determined that we complied with 5C. The district court said we complied with 5A1 and stopped there because it correctly said you only have to comply with one. So I don't even need to consider the remaining arguments that are made. That's very different from what we started out with. Because I thought you were saying that the district court had found that C was satisfied and that they had not challenged that on appeal. And they have to challenge every basis. Appellant's always in a worse position. Appellant has to challenge every basis of the district court's ruling, right? Yes. I prefer to be on this side. Yeah, I'm sure you do. But it doesn't seem like this is a situation where we have a failure on their part to do that. No. And I'm sorry, again, if I misspoke earlier. The 5C ruling was not that we complied with 5C and that our methodology complied with 5C. The argument that was made in the complaint and that was advanced in the district court was that we did not provide the required information that's also part of 5C. The district court said, no, the CCC report does comply with the information that's required by 5C. Disagreed with plaintiff's reading of that subsection, but did not say, oh, and in addition to complying with 5A1, which the district court did find, that you complied with 5C. But they did not bring that up, the ruling on 5C in the appeal. And therefore, I think they have waived the argument that we did not comply with 5C as to what information was provided. But I think that the argument still stands that we've complied with the methodology set forth in 5, we've complied with 5A1, 5A2, 5A3, and 5C. So all of those have been complied with, which means that the district court was right really essentially for any reason and could be affirmed under any of those subsections as to summary judgment. Did you make a 5C argument? In this court? This court. I think it was made, I don't think it was fully fleshed out because of the fact that plaintiffs didn't raise it in their- I think you made 1T3. I'm sorry, say that again. Made 1, 2, and 3. Yeah, absolutely. Made 1, 2, and 3. Yes, yes. And our contention is absolutely that the CCC methodology complied with subsection 5A1, 5A2, and 5A3. And I want to- You see in those statutes, it seems in those portions, some sort of implied authority to make adjustments. If you were the Florida legislature and you did not want those adjustments to be a part of the process, how would you change the statute? Well, I think that you would change the based on and derived from language. To say what? I'm sorry. To say what? Oh, to say, I think it would have to say to be equal to the amount or the average of the amount that is either the- Advertised price. Right, the advertised price or the retail cost of dealer quotations to be equal to the average of or you could explicitly say condition is not a factor that should go into this calculation. I think there's a number of things. This isn't a situation, as your honor identified, where we're simply just saying, well, here's the two values and we're just going to arbitrarily subtract $10,000. But why couldn't you? I mean, it is technically, that would be based on those prices, right? Well, right. But I don't think that then you're doing it based on a comparable motor vehicle. And I think maybe where our disconnect is, is when do you determine the comparable motor vehicle? And I think maybe your honors- Whether it's available in the local market area. So I think a vehicle that is available in the local market area minus an adjustment for quality is not a comparable vehicle available in the local market area. Well, I think I disagree with that because I think that when you're looking at the definition of comparable motor vehicle, we're talking about, I think, maybe just like where the timing is. And I don't know that we need to have the timing set as the comparable motor vehicle has to be the one that they go out and find right then and there. I think that it can be adjusted based on condition. Within the preceding 90 days. That seems actually pretty specific. It seems like the legislature is saying, find a real car that someone could buy that is comparable and then find another one, a real car, and average those two prices. Right. And again, I would go back to, it does not say that it has to be equal to the amount of those two cars. It says it should be based on and then derived from. So it's not saying that you take those two cars and you have to then just plug them in and give the insured that amount. If the legislature wanted it to be that, they could have written, it's got to be equal to and it doesn't. And I see that my time is up. So if there's no further questions, we would ask that this court affirm the district court's decisions, granting summary judgment in favor of Safeco and denying class certification. Okay. Mr. Mandel, you say four minutes. So let's start by trying to dispense with this C argument. The court gave one and only one reason that it granted. I think it's out. Okay. Right. So let's go to the based on and derived from argument. And Judge Grant, I think you articulated it perfectly. If based on and derived from mean I only have to start with the values of actual, you know, the amounts I could have bought actual vehicles in the market in the last 90 days, then there's no limit to what you can do. I mean, then they get to say, I'm taking a minus $5,000 adjustment, and it's the because I want to adjustment. I mean, I don't think that based on and derived on or are just say, start with these things, and then you can do whatever else you want. I just don't think that. And I think though, and they may not mean that it may not mean that you can do something arbitrary, but I don't think that it necessarily means that it can't do what they did. And so and because and my concern is that what we're dealing with here is the first, the object here, the end object is to determine the actual cash value of the total loss or replacement with another of like kind and quality. That's a different that's different from comparable value. It's like kind and quality, which which those two, those two objects that are the overall object is what would it take to get this car to put the plaintiff in the position that the insurance policyholder, the car owner in a position that they were beforehand. And then you, you have these methods, you can get a cost derived from comparable vehicles, not equal to that. That's my concern. Your Honor, first of all, you're taking language from be this like kind and quality in a, that what you have to pay is the actual cost. A cost existing in reality. Okay, an actual thing to buy a comparable motor vehicle. And then a one says the cost of two or more vehicles. Well, what does cost mean? According to the Oxford Cambridge dictionary. It's the amount of money required to buy something. And there were never any two vehicles available in the marketplace that you could, that the amount of money that required to buy those two cars that they used in their thing. There were never any of these cars minus a thousand, the advertised prices minus a thousand sixty four dollars that you could have bought any of those cars for those values were fictional values. They were not actually the cost of any two or more vehicles. And the word cost has a meaning. And it is the limitation that they say doesn't exist. And if you use derived from to get around the fact that you're supposed to use actual prices that you could have purchased vehicles for prices, what you use actual prices. But the point of derived from is what is what you're trying to determine is what would put the car owner back in exactly the same position they were before. And the recognition is that no two cars are exactly alike. Of course, it makes sense that it's not an arbitrary adjustment. If it were, then it would violate the statute. But but it seems to me that that making some adjustment based on that, the indisputable fact that two vehicles are not going to be exactly alike makes sense. But but your honor, it is arbitrary. We're not talking about adjusting her value. They're taking 12 comparable vehicles with various mileages, various conditions, you know, various prices. And they're applying the same one thousand sixty four dollars adjustment to all of them. That can't be anything but arbitrary. And it doesn't reflect actual cost. Basically, in summary, the questions Judge Grant asked opposing counsel are exactly the reasons the district court erred in granting summary judgment. OK, we'll move to the last case, Mr.